Ronald and Vicki WYATT *v.* ST. PAUL FIRE & MARINE
INSURANCE CO. and Lynn Nowlin Bryant

93-566                                              868 S.W.2d 505

Supreme Court of Arkansas
Opinion delivered January 24, 1994
[Rehearing denied February 21, 1994.*]

*Newbern and Corbin, JJ, not participating.

*Boswell, Tucker & Brewster*, by: *Ted Boswell*, for appellants.

*Shackleford, Shackleford & Phillips, P.A.*, by: *Dennis Shackleford*, for appellees.

JACK HOLT, JR., Chief Justice. The appellee, Ms. Lynn Nowlin Bryant, a licensed practical nurse employed by Warner Brown Hospital, gave information to a relative that the appellant, Ronald Wyatt, a hospital patient either had Acquired Immune Deficiency Syndrome (AIDS) or was being tested for AIDS. As a result, Mr. Wyatt sued Ms. Bryant and Warner Brown Hospital's insurance company, St. Paul Fire & Marine Insurance Company (St. Paul). The trial court found in essence that the allegations raised by Ronald and Vicki Wyatt against the parties did not constitute medical malpractice pursuant to Ark. Code Ann. § § 16-114-201 – 209 and granted motions for summary judgment in the parties favor.

The issue before us is whether or not the trial court erred in finding that there was no genuine issue of material fact in which the court could determine that a medical malpractice occurred.

The appellant, Ronald Wyatt, was admitted to Warner Brown Hospital in El Dorado, Arkansas, for evaluation and treatment resulting from sudden onset of paralysis, weakness, slurred speech, and other symptoms. Mr. Wyatt was given a magnetic resonance imaging scan which revealed that his condition was consistent with "moderately extensive multiple sclerosis and AIDS cannot be excluded."

One of the appellees, Lynn Nowlin Bryant, was a licensed practical nurse employed by Warner Brown Hospital during Mr. Wyatt's hospitalization. Prior to learning of his test results, she told Suzanne Bryant, the manager of the Exxon Store in Hampton, Arkansas (and also the wife of Lynn's husband's first cousin), either that Mr. Wyatt had AIDS or that he was being tested for AIDS (the facts are in dispute as to this point). According to Lynn Bryant's deposition, she wanted to convey this information to Suzanne because:

I knew that she worked with him when he delivered cakes

to the store and I guess that I was maybe concerned for her health if he did in fact have it. I told Suzanne Bryant that Ronald Wyatt, who I found out from a nurse on my shift was a routeman for Dolly Madison, was being tested for AIDS, and three or four days later when the test results came back, I did tell her that they were negative and he had multiple sclerosis.

Mr. Wyatt and his wife filed two complaints against Ms. Bryant, alleging that her statements to a third party that he "has AIDS" constituted medical negligence, medical malpractice, invasion of privacy, defamation by slander, and the tort of outrage. His wife claimed as her cause of action that she suffered and continues to suffer loss of consortium and mental anguish.

The Wyatts also filed a complaint again St. Paul, alleging that the failure of the hospital and its employee, Ms. Bryant, to maintain "medical confidentiality" invaded his personal privacy. Further, he claimed that the hospital's and its employee's actions constituted medical negligence, medical malpractice, invasion of privacy, defamation by slander, and the tort of outrage. His wife again claimed damages due to loss of consortium and mental anguish. Together, they claimed $600,000 in compensatory and $600,000 in punitive damages. After the trial court consolidated the three complaints, Ms. Bryant filed a petition for summary judgment, stating that there could be no cause of action for the defamation or slander claim because her statement was true and that no cause of action for medical negligence or medical malpractice existed under the circumstances of the case. The Wyatts responded that, because there was a factual dispute as to what Ms. Bryant had said with regard to Mr. Wyatt's medical condition, summary judgment was inappropriate.

St. Paul also petitioned the trial court for summary judgment contending that Ms. Bryant's statements, whatever they may have been, "occurred outside the course and scope of her employment, and plaintiffs cannot establish a prima facie case against Warner Brown Hospital on a respondeat superior theory." The Wyatts responded in their pleadings by contending "that the statement made by Lynn Nowlin Bryant was made in the course and scope of her employment and that summary judgment on this issue is improper," and that St. Paul's "failure to offer proof

on the causes of action which plaintiffs have filed in their complaint, is fatal to its motion for summary judgment."

A hearing was held by the trial court on the two motions for summary judgment, the centerpiece of which was the question: whether or not Ms. Bryant's statement constituted "malpractice" under Ark. Code Ann. § 16-114-201 – 209 (1987). During the course of the hearing, the trial judge noted that he was having a "hard time" with regard to the medical malpractice part of the arguments, although he viewed Ms. Bryant's statements as possible matters of slander and breach of confidentiality.

After this hearing, the trial court issued its written order, which in the main provided:

1. The Motion for Summary Judgment of Defendant, St. Paul Fire & Marine Insurance Company, should be granted and the complaint as to St. Paul Fire & Marine Insurance Company should be dismissed with prejudice.

2. The Motion for Summary Judgment of Defendant, Lynn Nowlin Bryant, should be denied as to the claims for slander and outrage, and should be granted as to all others.

Thereafter, the Wyatts filed notice of appeal on both findings. Realizing that a claim for slander and outrage against Ms. Bryant remained and that the trial court's order in this regard was not a final appealable order, the Wyatts filed a motion for voluntary dismissal of these claims against Ms. Bryant. This motion was granted and appropriate orders issued, leaving the trial court's determination that an action for medical malpractice did not lie against Ms. Bryant or St. Paul as the primary issue before us, although there is disagreement among the litigants as to what constituted the basis of the court's granting of summary judgment. The Wyatts approach their argument under the assumption that there is one central issue — whether or not the conduct of the defending parties constituted medical malpractice. St. Paul disagrees and contends that the basis of its motion was premised on whether Ms. Bryant was acting within the scope of her employment.

Although St. Paul's motion for summary judgment addresses the issue of respondeat superior, not medical malpractice, and

the trial judge may have based his judgment on this premise, we must first resolve the threshold question: was there a genuine issue of material fact as to whether or not Ms. Bryant's statements constituted medical malpractice. If we hold that the issue of material fact exists, then the granting of a summary judgment to her favor by the trial court must be overturned and the issue of respondeat superior as to St. Paul properly addressed. Conversely, if we hold that the actions of Ms. Bryant did not constitute a medical malpractice, the issue of respondeat superior as to Ms. Bryant's relationship with Warner Brown Hospital is of no concern.

Summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Hickson* v. *Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed in a light most favorable to the party resisting the motion. Any doubts and inferences must be resolved against the moving party. *Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988); *Cross* v. *Coffman*, 304 Ark. 666, 805 S.W.2d 44 (1991).The burden in a summary judgment proceeding is on the moving party and cannot be shifted when there is no offer of proof on a controverted issue. *Collyard* v. *American Home Assurance Co.*, 271 Ark. 228, 607 S.W.2d 666 (1980). When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. *Harrell* v. *International Paper Co.*, 305 Ark. 490, 808 S.W.2d 779 (1991).

Arkansas Code Annotated § 16-114-200 *et seq.* governs actions brought for alleged malpractice by medical providers. Specifically, Ark. Code Ann. § 16-114-201 (1987) provides relevant definitions:

As used in this subchapter, unless the context otherwise requires:

(1) "Action for medical injury" means any action against a medical care provider, whether based in tort, contract or otherwise, to recover damages on account of medical injury;

(2) "Medical care provider" means a physician, certified registered nurse anesthetist, physician's assistant, nurse. . . .

(3) "Medical injury" or "injury" means any adverse consequences arising out of or sustained *in the course of the professional services being rendered by a medical care provider,* whether resulting from negligence, error or omission in the performance of such service; or of warranty or in violation of contract; or from failure to diagnose; or from premature abandonment of a patient or of a course of treatment; or from failure to properly maintain equipment or appliances necessary to the rendition of such services; or otherwise arising out of or sustained in the course of such services.

(Emphasis added.)

The question of what constitutes a "medical injury" under our code is not new to this court, although our attention to this issue has, for the most part, been secondary to other questions before us. In *Sexton* v. *St. Paul Fire & Marine Ins. Co.,* 275 Ark. 361, 631 S.W.2d 270 (1982), a case in which a patient died as a result of a fall from his hospital bed, our court was closely divided on the question of whether the plaintiff had met her burden of proof, as required by our malpractice statute, as to the degree of skill used by other hospitals in the same or similar locality. In order to avoid meeting this burden, appellant argued that the decision whether or not to use a safety restraining vest to keep patients in bed was not a professional service. Relying on the fact that only a doctor could authorize the use of the vest, we held that its use was a professional service, and, thus, fit under our code definition of a medical injury.

Later in *Brown* v. *St. Paul Mercury Ins. Co.,* 292 Ark. 558, 732 S.W.2d 130 (1987), upon which the Wyatts now rely to sustain their position, we again addressed the definition of "medical injury" but this time, in the context of our statutes of limitations as to a claim for wrongful death. In *Brown,* appellants, spouse and next of kin of Mr. Roy Brown, filed suit against an alcohol treatment center and its insurer after Mr. Brown, a patient, walked out of an unlocked door onto the roof of the treatment center and either jumped or fell to his death. The trial court granted the appellee's motion for summary judgment, concluding that the two-year statute of limitation for medical injury barred the appellants' claim. On appeal, appellants argued that Mr. Brown's death

was not the result of a medical injury. We held that it was within the scope of the center's professional services to provide a safe environment for this patient and that failure to do so gave rise to a medical injury. Nevertheless, we reversed the trial court's finding, explaining that although "Brown's death is properly characterized as a medical injury, we hold that appellants' claim is founded on our wrongful death statutes and that its three-year statute of limitations applies." *Brown*, 292 Ark. at 560, 732 S.W.2d at 131. Thus, Wyatts' reliance on *Brown* for an appropriate definition of "medical injury" is misplaced.

In addition, we basically overruled *Brown* by our holding in *Bailey* v. *Rose Care Center*, 307 Ark. 14, 817 S.W.2d 412 (1991). Ms. Bailey, the sister of Mr. Dowdy, an eighty-nine year old patient of the Rose Care Center, filed suit alleging negligence on the part of the center after Mr. Dowdy left the center in his wheelchair and was struck by a car and killed. After the jury returned a verdict in favor of the appellees, Ms. Bailey appealed contending, in part, that the trial court erred in giving AMI 1501, the jury instruction given in cases involving medical injuries. Holding that the accident was not the result of a "medical injury" but instead involved a question of whether the patient was properly supervised by the LPN and five nurses aides on duty that night, we stated:

> On reexamination, we conclude that the facts set out in *Brown* did not fall within the definition of medical injury. . . . [T]he circumstances in *Brown* did not involve a professional service but instead raised only the question of whether a patient was properly supervised by the health center's staff. Likewise, in the present case, while Mr. Dowdy was in a wheelchair, he was not ordered by a doctor to be restrained and was able to move around the nursing home at will. . . .

> In sum, Mr. Dowdy was under a doctor's care while he was in the nursing home, but his death was not the result of a doctor's treatment or order. Instead, the question is whether Mr. Dowdy was properly supervised by the one LPN and five nurse's aides on duty that night. The answer to this question merely requires the jury to decide whether the nursing home used ordinary care in furnishing Mr.

Dowdy the care and attention reasonably required by his mental and physical condition.

*Bailey*, 307 Ark. at 19, 817 S.W.2d at 414-415.

Applying the rationale of *Bailey* to the facts at hand, it is clear that the actions of Lynn Bryant in revealing confidential information she acquired at work did not fall within our expressed view of what constitutes a medical injury. In further evaluating this issue, we consider the rationale of a New York Supreme Court decision, *Tighe* v. *Ginsberg*, 540 N.Y.S.2d 99, 146 A.D.2d 268 (1989), helpful. There, the plaintiff visited the defendant doctor for treatment of a hearing problem and sued him when the doctor disclosed his medical records without authorization. In determining which statute of limitations applied, the New York court held that this "unauthorized disclosure" was an action sounding in negligence and not in medical malpractice. As the New York court stated, "Although in a general sense a doctor furnishes medical care to patients, clearly not every act of negligence toward a patient constitutes medical malpractice." *Tighe*, 540 N.Y.S.2d at 100.

Also convincing is the New York Supreme Court's decision in *Borrillo* v. *Beekman Downtown Hosp.*, 537 N.Y.S.2d 219, 146 A.D.2d 734 (1989), in which the court held:

> The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of facts. Where the matter requires the consideration of the professional skill and knowledge of the practitioner of the medical facility, the more specialized theory of medical malpractice applies.

(Citations omitted.) *But see, contra, Watts* v. *Cumberland County Hosp. System Inc.*, 75 N.C. App. 1, 330 S.E.2d 242, later proceeding, 74 N.C. App. 769, 330 S.E.2d 256 (1985), *and rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986) (as cited in Holly Piehler Rockwell, Annotation, *What patient claims against doctor, hospital or similar health care provider are not*

*subject to statutes specifically governing actions and damages for medical malpractice*, 89 A.L.R. 4th 887, § 39 (1991)).

In sum, we are not inclined to extend the definition of medical injury to the facts before us, and we hold that the trial court did not err in granting summary judgment in favor of St. Paul and Ms. Bryant.

GLAZE, J., not participating.