Melissa KNOWLTON *v.* Harry WARD

93-1170                                    889 S.W.2d 721

Supreme Court of Arkansas
Opinion delivered December 5, 1994
[Rehearing denied January 17, 1995.*]

*Brown, J., not participating.

*J. Fred Hart*, for appellant.

*Fred H. Harrison*, General Counsel for the University of Arkansas; and *Winston Bryant*, Att'y Gen., by: *Jeffrey A. Bell*, Deputy Att'y Gen., for appellee.

JOANN C. MAXEY, Special Justice. Appellant Melissa Knowl-

ton filed an illegal exaction suit against Dr. Harry Ward, as chancellor of the University of Arkansas School of Medical Science (UAMS), and the Arkansas Genetics Program (AGP), which is a part of UAMS. In her suit, Knowlton maintained that the AGP performed abortions in violation of Amendment 68 of the Arkansas Constitution[1] and asked the trial court to enjoin its operation. Further, Knowlton asked the trial court to construe the term "mother's life" as expressed in Amendment 68.

Knowlton's action was the second of three lawsuits involving Amendment 68 that were filed against UAMS. Because all three cases were eventually consolidated for trial, it is necessary to discuss the history of the proceedings involving these cases in order to address properly the legal issues raised by Knowlton in her appeal.

The first of the three lawsuits, all of which were filed as illegal exaction suits, was *Forbes* v. *Ward*.[2] The Forbes complaint, which was filed on May 24, 1991, alleged that UAMS, as a recipient of public funds, was prohibited by Amendment 68 from performing any abortions other than abortions required to save the life of the mother regardless of whether the patient or a third party paid for the actual cost of the abortion. The gravamen of Forbes' argument was that since UAMS receives public funding any service performed at that institution is paid either in part or in whole by public funds.

On June 28, 1991 the trial court, after a hearing, issued a preliminary injunction, which essentially prohibited UAMS from performing abortions other than to save the life of the mother,

---

[1]Amendment 68 of the Arkansas Constitution states as follows:

Section 1. Public Funding. No public funds may be used to pay for any abortion except to save a mother's life.

Section 2. Public Policy. The public policy of Arkansas is to protect the life of every unborn child from conception until birth, to the extent permitted by the federal Constitution.

Section 3. Effect of Amendment. This amendment will not affect contraceptives or require an appropriation of public funds.

[2]For purposes of clarity the defendants in all three lawsuits, as well as in the Knowlton appeal, are referred to as UAMS. The Arkansas Genetics Program is referred to as AGP.

unless the particular patient could pay for the cost of the abortion in advance or furnish sufficient guarantee of payment by a third-party provider.

Approximately a month and a half later, on August 8, 1991, Knowlton and the Unborn Child Amendment Committee (UCAC) filed their complaints against UAMS. The UCAC plaintiffs, who have also been referred to throughout the proceedings as the "Rutherford plaintiffs," made allegations and requested relief similar to the allegations set forth and relief requested by Forbes. That is, the Unborn Child Amendment Committee also alleged that UAMS, as a recipient of public funds, was prohibited by Amendment 68 from performing any abortions other than abortions required to save the life of the mother, regardless of whether the patient or a third party paid for the actual cost of the abortion.

On August 14, 1991, UAMS filed a motion for partial summary judgment, alleging that AGP was not a proper party, because the program did not perform any abortions, and asked that AGP be dismissed. On February 19, 1992, the trial court granted UAMS's motion for partial summary judgment and dismissed AGP as a party. Knowlton filed a motion for reconsideration, which was denied on March 24, 1992. The decision for partial summary judgment was appealed to this court in case No. 92-800. On September 14, 1992, Knowlton's appeal of the partial summary judgment was dismissed as being premature.[3]

On December 23, 1992, *Knowlton* was consolidated with *Forbes* v. *Ward* and *Unborn Child Amendment Committee* v. *Ward, et al.*, these later two cases having been consolidated earlier by an agreed order. By letter dated March 22, 1993, the trial court directed the parties to have all pleadings filed no later than June 7, 1993 and advised them that a trial would be held on June 18, 1993 for any issues still outstanding.

Prior to the June 18, 1993 trial date, UAMS and UCAC filed cross motions for summary judgment with regard to the issue of whether UAMS, as a recipient of public funds, was prohibited by Amendment 68 from performing any abortions other than to save

---

[3]References to the record filed as part of the original appeal are referred to as "O.R." References to the record that was filed with this appeal are referred to as "S.R."

the life of a mother regardless of whether the patient or a third party paid for the actual cost of the abortion. UAMS and UCAC stipulated that there were no genuine issues of material fact and that the suit brought by UCAC could be decided by summary judgment motions.

A trial was held on June 18, 1993, and on June 30, 1993, the court issued an order in which it adopted the preliminary order and made it a permanent injunction. Although the trial court issued a permanent injunction against UAMS that placed limitations on the abortions that could be performed at UAMS, the trial court did not accept the more expansive interpretation of Amendment 68 that was advanced by the Unborn Child Amendment Committee. This less restrictive reading of Amendment 68 allowed UAMS to continue to perform abortions for purposes other than to preserve the life of the mother provided the abortions were paid for by the patient or a third party provider.[4]

As part of its June 30, 1993 order, the trial court also adopted its order of March 24, 1992, which dismissed Knowlton's allegations against the AGP. Further, the court dismissed that part of Knowlton's complaint seeking to have the court define the term "mother's life" on the basis that Knowlton had failed to present a controversy for the court to determine.

---

[4]The Unborn Child Amendment Committee appealed the decision of the trial court. Their appeal focused on that part of the trial court's decision that allowed abortions to be performed at UAMS provided they were paid for in advance by a patient or there was a sufficient guarantee of payment by a third party provider. At issue in that appeal is the meaning of "public funds" as used in Amendment 68.

Subsequent to the appeal being filed by the Unborn Child Amendment Committee, a federal district court in *Little Rock Family Planning Services et al.* v. *Thomas Dalton*, 1994 W.L. 386796 at 14 (E.D. Ark.) issued an order holding that Amendment 68 was unconstitutional. As a result of the federal court's ruling, UAMS filed a motion to stay the chancellor's injunction pending the appeal of the federal district court's decision.

This court issued a decision on October 3, 1994 granting the appellees' motion to stay the effect of the Pulaski County Chancery Court's June 18, 1993, order and permanent injunction pending resolution of the appeal of the decision in *Little Rock Family Planning Services et al.* v. *Thomas Dalton*. This court also stayed further proceedings on the UCAC appeal.

In the instant case, neither party filed a motion for stay. As a result, where we did not reach the merits in the UCAC appeal, we do so here.

From the chancellor's order of June 30, 1993, appellant Knowlton appeals the following issues: (1) Whether the trial court erred by granting partial summary judgment in favor of UAMS by dismissing AGP as a party to the lawsuit; (2) Whether the trial court erred by refusing to allow the appellant to adduce testimony concerning the term "mother's life;" and (3) Whether the trial court erred by denying the Rutherford (UCAC) Plaintiffs' motion for summary judgment. We will discuss these issues in order.

(1) *Dismissal of AGP as a party.*

Rule 56 of the Arkansas Rules of Civil Procedure provides:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(e) further provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate shall be entered against him.

The standard by which summary judgment motions are to be granted by the trial court and then reviewed on appeal was expressed in *Dodds* v. *Hanover Insurance Company*, 317 Ark. 563, 880 S.W.2d 311 (1994), a recent decision by this court.

> Summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Wyatt* v. *St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). On appellate review, this court must only decide if the granting of summary judgment was appropriate based on whether the eviden-

tiary items presented by the moving party in support of the motion leaves a material question of fact unanswered. *Reynolds* v. *Shelter Mutual Ins. Co.* 313 Ark. 145, 852 S.W.2d 799 (1993). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Wyatt*, 313 Ark. 546. Only when the movant makes a prima facie showing of entitlement does the burden shift, and then the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Id.*

In seeking summary judgment, UAMS maintained that the AGP did not perform abortions and attached the affidavit of Dr. Chris Cunniff, a codirector of the AGP in support of this assertion. In his affidavit, Cunniff attested that the purpose of the AGP is to provide medical care in support of individuals affected with a wide variety of genetic disorders and birth defects and to inform families who have, or are at risk to have, a pregnancy that is at quantifiable risk of an adverse outcome." O.R. 15. Cunniff further stated that AGP does not perform abortions but does provide "testing, diagnosis, and counseling to families during the preconceptional, prenatal and postnatal periods." O.R. 15. The affidavit and accompanying documents go on to specify the particular tests and counseling done through AGP.

Although Knowlton specifically alleged in her complaint that the AGP was operated for the sole purpose of "aborting disabled, unborn children" and "for a purpose other than for the preservation of the life of the mother," Knowlton responded to the motion by merely alleging that there were material facts in dispute and attached various affidavits and materials showing that non-therapeutic testing was performed at AGP and that some of the patients who had had testing performed at AGP had subsequently had abortions performed at UAMS. However, none of the affidavits refuted the affidavit of Dr. Cunniff or supported Knowlton's allegation that AGP either performed abortions, existed solely for the purpose of aborting defective fetuses or paid for any abortions performed at some other location.

In granting UAMS's motion for partial summary judgment, the trial court accepted as true the general premise advanced by

Knowlton that not all of the tests and series of tests performed by AGP have therapeutic value. The court concluded that even if Knowlton's premise were true it did not affect the outcome of the motion because Knowlton's allegations did not present a "material issue of fact" regarding whether abortions were being performed at AGP or were being paid for by AGP.

The thrust of Knowlton's argument before the trial court, as well as her argument before this court, is that Amendment 68 not only prohibits the use of public funds to pay for the performance of abortions for a purpose other than to save the life of the mother, but it also prohibits the use of public funds to pay for *any activity* that might further or advance the performance of abortions. Thus, in order for us to determine whether summary judgment was appropriately granted we must first determine what activity is prohibited by Amendment 68, the relevant portions being sections 1 and 2.

Section 1 of Amendment 68 proscribes the use of public funds to "pay for any abortion." In construing the meaning of this provision we apply the same rules governing the construction of legislative statutes. *Gazaway* v. *Greene County Equalization Board*, 314 Ark. 569, 864 S.W.2d 233 (1993); *Faubus* v. *Kinney*, 239 Ark. 443, 389 S.W.2d 887 (1965). The fundamental rule is that the words of the constitution or statute should ordinarily be given their obvious and natural meaning. *Gipson* v. *Maner* and *Gibson* v. *Young*, 225 Ark. 976, 980, 287 S.W.2d 467 (1956). If the language used in a constitutional provision is plain and unambiguous, the court should not seek other aides of interpretation in determining the intent of the framers and voters. *Ellison* v. *Oliver*, 147 Ark. 252, 264, 227 S.W. 586 (1921).

It hardly seems possible that any other language could be used to explain more plainly or unambiguously the purpose or meaning of the phrase "to pay for any abortion." Very simply, in order for AGP, or any other entity, to be in violation of Section 1 of Amendment 68, the following proof would have to be presented: (1) Abortions were performed at AGP that were paid for with public funds; or (2) AGP paid for, with public funds, abortions that were performed elsewhere. The plain and unambiguous meaning of this provision does not prohibit the "testing,

diagnosis, and counseling to families during the preconceptional, prenatal and postnatal periods" that is performed at AGP.

We turn to Section 2 of Amendment 68, which states that it is the public policy of this state to "protect the life of every unborn child from conception until birth." Knowlton argues that this section of Amendment 68 is a self-executing provision that prohibits the State from engaging in any activity that furthers or advances abortions. We disagree.

■■ In order for a constitutional provision to be self-executing, there must be language in the provision indicating that it "is intended as a present enactment, complete in itself as definitive legislation, or contemplates subsequent legislation to carry it into effect." *Myhand v. Erwin*, 231 Ark. 444, 452, 330 S.W.2d 68 (1959), *citing* 16 C.J.S. §38, Const. Law, p. 146. It is self-executing if:

> it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

Cooley's Const. Law (7th Ed.), 0. 121. Section 2 of Amendment 68 merely expresses the public policy of the state. It does not provide any means by which the policy is to be effectuated and therefore cannot be considered a self-executing provision. In particular, it cannot be construed as prohibiting the kind of activity suggested by Knowlton.

Having set these parameters with regard to the meaning of Amendment 68, we must now decide whether the record evidence reflects that there was a fact issue as to whether abortions either were being performed or paid for by AGP.

■ As stated previously, UAMS presented, through its motion, evidence that the purpose and function of the AGP is to assist women and families prior to conception, through pregnancy, and after pregnancy in identifying and coping with the risk of genetic birth defects. It further presented evidence that while some of AGP patients ultimately decide to terminate their pregnancy, AGP neither performs nor pays for those abortions. By presenting this evidence, UAMS made a prima facie showing of entitlement to summary judgment and shifted to Knowl-

ton the burden of presenting proof. However, Knowlton failed to meet proof with proof as required by Rule 56 (e) and failed to show that there were genuine issues of material fact. Accordingly, the trial court's granting of partial summary judgment dismissing the Arkansas Genetics Program is affirmed.

(2) *Testimony concerning term "mother's life."*

Knowlton maintains that the trial court erred by failing to permit Knowlton to adduce evidence as to the definition of the term "mother's life for purposes of Amendment 68." Knowlton misstates the events that occurred at trial. Contrary to Knowlton's posture that the trial court refused to allow her to present testimony to establish her case, the record is replete with the efforts of the trial court requesting counsel for Knowlton to put on evidence concerning any controversy or existence of an ambiguity with the term "mother's life."

The following excerpts from the trial transcript are illustrative of the trial court's repeated efforts to have Knowlton present evidence:

Mr. Hart: Judge, the only other issue that I see is the question of the life of the mother. . . .

S.R. p. 238.

The Court: Is there a controversy?

Mr. Hart: I think potentially there is, Judge.

The Court: Well, is there a controversy?

Mr. Hart: Yes, I think there is.

The Court: Well, put on your proof.

Mr. Hart: Okay.

The Court: Call your first witness.

Mr. Hart: Well, Judge, my understanding was that we couldn't—well, I don't have the witnesses here today.

S.R. p. 239.

The Court: Well, put on your proof, Mr. Hart.

Mr. Hart: Judge, I'm sorry. I'm not following you, that—the proof that it is in controversy?

The Court: We just had two motions for summary judgment stating that there were no material issues of fact on the question of illegal exaction regarding public funding.

Mr. Hart: Yes, ma'am.

The Court: That was the cause of action, no material issues of fact, and it was a question of law. You have not filed a motion for summary judgment, and you have specifically stated that it is a question of fact and not ripe for summary judgment. So we are here on a trial on that issue, and you're going to have to show me that there is a problem, a controversy, regarding what that means.

Mr. Hart: So when you say put on proof that there is a controversy—

The Court: Evidence.

Mr. Hart: Okay.

The Court: This is a trial.

Mr. Hart: We have nothing, Judge, other than what we've already proffered to the court in terms of the question that the life of the mother—

The Court: Well, what have you proffered?

Mr. Hart: Judge, we have responded to both motions for summary judgment by pointing out that—

The Court: Mr. Hart, that summary judgment motion was specifically on the public funding issue.

Mr. Hart: Yes, ma'am.

The Court: And you specifically stated in your brief that—the other issue was not ripe for summary judgment and that it was a question of fact, and you have filed no other motions regarding this particular issue.

Mr. Hart: Judge, it is a question—there is a genuine issue of material fact.

The Court: Well, put it on.

Mr. Hart: Well, Judge, as far as what the controversy is, we have nothing other than what I've already said, if that— if I understand the court correctly.

The Court: I want you to put on your case, Mr. Hart. Put on your case.

Mr. Hart: Judge, we have no case aside from what I have already said, that there is a genuine issue of material fact and—

S.R. 242-243.

Mr. Hart: Judge, I'd ask that the order include this court's specific ruling on its refusal to take testimony on the definition of the life of a mother and—

The Court: I did not refuse to take testimony, Mr. Hart.

Mr. Hart: Well, whatever it—

The Court: I would have loved to have had some testimony.

Mr. Hart: Judge, whatever it was the court did I'd like to have it reflected in the order, please.

The Court: There's no question about it. If you'll reflect that there was no evidence presented to determine that there was any controversy or ambiguity in the term "mother's life," and that the court specifically did not rule on a definition of that term, since it was not properly presented to this court.

S.R. 277-278.

■ From the colloquy above, the reader can readily see the trial court did not refuse Knowlton the opportunity to put on testimony to establish her case. In fact, the trial court urged Knowlton to do so but Knowlton failed to present evidence and to develop a record on this issue. Knowlton failed to present a justiciable controversy for the trial court to decide. She cannot complain on appeal that the chancellor erred.

■ Moreover, this court will not consider on appeal an

issue that was not fully developed at the trial level. *Hastings* v. *Planters and Stockmen Bank*, 307 Ark. 34, 818 S.W.2d 239 (1991).

Accordingly, the chancellor's decision on this issue is affirmed.

### (3) *The Rutherford (UCAC) Plaintiffs' Motion for Summary Judgment.*

The final issue raised by Knowlton is that the court erred in refusing to grant the Rutherford (UCAC) plaintiffs' motion for partial summary judgment. We dismiss Knowlton's appeal as to this issue for two reasons.

First, although Knowlton was consolidated with UCAC and Forbes for trial purposes, Knowlton did not become a party to the UCAC lawsuit. Consolidation of cases "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson* v. *Manhattan Ry. Co.*, 53 S.Ct. 721, 727, 289 U.S. 479, 496-497, 77 L.Ed. 1331 (1933). *See also St. Louis Southwestern Ry. Co.* v. *Pennington*, 261 Ark. 650, 553 S.W.2d 436 (1977); *State Life Ins. Co.* v. *Goodrum*, 189 Ark. 509, 74 S.W.2d 230 (1934). Since Knowlton was not a party to the UCAC lawsuit and did not join in UCAC's motion for summary judgment, Knowlton does not have standing to raise on appeal an issue that she did not present at trial.

Second, even if Knowlton had joined in UCAC's motion for summary judgment, this court has stayed the proceedings of the UCAC appeal by its order dated October 3, 1994. It would be inappropriate to address through this decision issues that are pending in the UCAC appeal.

The trial court's decision granting the UAMS motion for partial summary judgment with respect to the dismissal of any allegations against AGP and dismissing Knowlton's request to have "mother's life" defined is affirmed. Knowlton's appeal of the trial court's denial of UCAC's motion for summary judgment is dismissed.

Affirmed in part. Appeal dismissed in part.

DUDLEY and NEWBERN, JJ., dissent.

BROWN, J., not participating.

DAVID NEWBERN, Justice, dissenting. With some temerity, recognizing that consistency is sometimes said to be the hobgoblin of small minds, I suggest we should remember what we did two months ago. In *The Unborn Child Amendment Comm.* v. *Ward*, 318 Ark. 165, 883 S.W.2d 817 (1994), we postponed interpretation of Amendment 68 because a United States District Court had declared it "void," sort of, and that decision was on appeal. As was noted in the dissenting opinion, the state court injunction we were asked to review was not necessarily inconsistent with that of the federal court.

Today we barge ahead and interpret Amendment 68 because "neither party filed a motion for stay." Are we saying the federal court decision has somehow lost its vitality because the parties in last month's case asked us for a stay but the ones now before us have not? We should have answered the questions asked about Amendment 68 last month. Having declined to do so then, however, we should decline to do so now.

I respectfully dissent.