The Honorable Henry "Hank" Wilkins IV State Senator 717 W. 2nd Avenue Pine Bluff, AR 71601
Dear Senator Wilkins:
You have requested my opinion on the issue raised by the following question:
 If a city holds a run-off election for mayor after the general election, which election is the correct one to use in calculating the signatures needed to order a referendum under Amendment 7 to the Arkansas Constitution?
RESPONSE
It is my opinion that the general election for mayor, rather than the run-off election, should be the basis for calculating the signatures needed for a municipal referendum under Amendment 7.
Amendment 7 states in pertinent part:
 Municipalities and Counties — The initiative and referendum powers of the people are hereby further reserved to the local voters of each municipality and county as to all local, special and municipal legislation of every character in and for their respective municipalities and counties, but no local legislation shall be enacted contrary to the Constitution or any general law of the State, and any general law shall have the effect of repealing any local legislation which is in conflict therewith.
* * *
 Fifteen per cent of the legal voters of any municipality or county may order the referendum, or invoke the initiative upon any local measures. In municipalities the number of signatures required upon any petition shall be computed upon the total vote cast for the office of mayor at the last preceding general election[.]
Ark. Const., Am. 7.
In interpreting Amendment 7, the Arkansas Supreme Court has always begun with the principle that because such a small percentage of the population can exercise such great powers through initiative and referendum, substantial compliance with the requirements of Amendment 7 is important. See, e.g., Sturdy v. Hall, Secretary of State, 201 Ark. 38,143 S.W.2d 547 (1940).
Although the court has also recognized that Amendment 7 "must be construed with some degree of liberality in order that its purposes may be well effectuated," Leigh and Thomas v. Hall, Secretary of State,232 Ark. 558, 339 S.W.2d 104 (1960), the court has resorted to such liberal construction only in instances where substantial compliance was not possible. For example, Yarbrough v. Witty, 336 Ark. 479, 987 S.W.2d 257
(1999), involved a situation in which Amendment 7 required the calculation of the required number of signatures on the petition in question to be based on the total votes cast in the last general election for circuit clerk. However, because the circuit clerk had run unopposed in the last general election, the votes had not been tabulated. The petitioners therefore could not substantially comply with the requirements of Amendment 7. The court held that because substantial compliance with the requirements of Amendment 7 was impossible under the circumstances, it was appropriate to look to another election — the last election for circuit clerk in which the votes were tabulated — to calculate the number of signatures required for the petition. Similarly, in Czech v. Munson,280 Ark. 219, 656 S.W.2d 696 (1983), the court authorized using the last governor's race as the basis for calculating the required signatures for a petition that, under the strict provisions of Amendment 7, were required to be calculated on the basis of the last mayor's race. Substantial compliance in that situation was impossible because the city was organized under a city manager form of government and therefore had not held a mayor's election upon which the signatures could be calculated.
Both Yarbrough and Munson involved situations in which substantial compliance with Amendment 7 was impossible. It is my opinion that in the absence of such an impossibility, substantial compliance will be required. This conclusion is bolstered by the court's approach to interpreting constitutional language generally. The court has held that the rules of statutory interpretation apply equally to the interpretation of constitutional provisions. See Unborn Child Amendment Comm. v. Ward,328 Ark. 454, 943 S.W.2d 591 (1997); Knowlton v. Ward, 318 Ark. 867,889 S.W.2d 721 (1994); Gazaway v. Greene County Equalization Bd.,314 Ark. 569, 864 S.W.2d 233 (1993). One of the most basic rules of statutory interpretation is that in the absence of an ambiguity, statutory language must be given its common meaning in ordinary usage. See, e.g.,Bourne v. Board Of Trustees, 347 Ark. 19, 59 S.W.3d 432 (2001);Arkansas County v. Desha County, 342 Ark. 135, 27 S.W.3d 379
(2000); Central Southern Companies, Inc. v. Weiss,339 Ark. 76, 3 S.W.3d 294 (1999). In light of these principles of interpretation, I must interpret Amendment 7's requirement of calculating the number of required signatures for a municipal referendum on the basis of the "general election" to mean the precisely that: the general election and not some other election. There is no question that the first round of citywide balloting for the office of mayor constitutes the "general election." The run-off election therefore is not the general election.[1] Under the court's rule of substantial compliance with Amendment 7, reliance upon the run-off election as a basis for calculating the required number of signatures would be permissible only if reliance upon the general election were impossible. In a situation in which both a general election and a run-off election are held, substantial compliance with Amendment 7's requirement of calculating the signatures on the basis of the general election is clearly possible.
Accordingly, I conclude that in such a situation, the general election, rather than the run-off election, must be used as the basis for calculating the required number of signatures for a municipal referendum.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] I acknowledge that run-off elections may, for certain purposes, be classified as "general elections." For example, some of the election laws refer to run-off elections as "runoff general elections." See, e.g.,
A.C.A. § 7-5-106. However, for purposes of the meaning of the term "general election" as used in Amendment 7, run-off elections, in my opinion, do not constitute "general elections."