The Honorable Tim Wooldridge State Senator Post Office Box 339 Paragould, AR 72451
Dear Senator Wooldridge:
I am writing in response to your request for an opinion on the following questions:
 1. Can an undeveloped area qualify as a Redevelopment District as defined by Act 1197 of 2001?
 2. Does the Bass Pro Shop Redevelopment District as established by the Little Rock City Board at the April 1, 2003, meeting qualify for the Redevelopment District as defined by Act 1197 of 2001 since the property has never been developed?
RESPONSE
It is my opinion that the answer to your first question is, generally, "yes." With regard to your second question, the issue of whether any particular redevelopment district is properly established under constitutional and statutory authority presents a question of fact outside the ordinary scope of an opinion from this office.
Question 1 — Can an undeveloped area qualify as a Redevelopment Districtas defined by Act 1197 of 2001?
It must first be noted that it is necessary to scrutinize both Act 1197 and the constitutional amendment that it implements to determine the answer to this question. Act 1197 of 2001 (codified at A.C.A. §§14-168-301 to -322 (Supp. 2001)) is the enabling legislation for Section 1 of Amendment 78 to the Arkansas Constitution, which authorizes tax increment financing as a mechanism to fund a "redevelopment district." Ark. Const. Amend. 78, § 1(d) (Supp. 2001).[1] Section 1 of Amendment 78 states in relevant part as follows:
 (a) Any city or county may form a redevelopment district for the purpose of financing one (1) or more redevelopment projects within the district.
 (b) A city or county which has formed a redevelopment district may issue bonds for the purpose of financing capital improvements for redevelopment projects within the district. The bonds may be secured by and be payable from all or a portion of the division of ad valorem taxes in the district provided for in (d) below. . . .
 (c) For purposes of this section, the term `redevelopment project' means an undertaking for eliminating, or preventing the development or spread of, slums or blighted, deteriorated, or deteriorating areas, for discouraging the loss of commerce, industry, or employment, or for increasing employment, or any combination thereof, as may be determined by the General Assembly.
 (d) The General Assembly may provide that the ad valorem taxes levied by any taxing unit, in which is located all or part of an area included in a redevelopment district, may be divided so that all or part of the ad valorem taxes levied against any increase in the assessed value of property in the area obtaining after the effective date of the ordinance approving the redevelopment plan for the district shall be used to pay any indebtedness incurred for the redevelopment project. . . .[2]
* * *
 (g) The General Assembly shall provide for the implementation of this section by law.
As you can see, the term "redevelopment district" is undefined by Amendment 78. Because the term "redevelopment" suggests new development, it might be contended that the amendment contemplates the formation of a redevelopment district from developed property only. In my opinion, however, the term "redevelopment" cannot be considered in isolation, but instead must be viewed in the context of the whole amendment. A basic rule of constitutional construction requires that the intent of Amendment 78 be determined from the language of the amendment considered in its entirety. See generally Thompson v. Younts, 282 Ark. 524, 669 S.W.2d 471
(1984) (noting this primary rule of statutory construction); and Knowltonv. Ward, 318 Ark. 867, 874, 889 S.W.2d 721 (1994) (observing that rules of constitutional construction track those of statutory construction).
Viewing the language of Section 1 of Amendment 78 as a whole, therefore, I find nothing to compel the conclusion that the area included in a redevelopment district must be developed property. To the contrary, the authorizing language is broad in scope, empowering a city or county to form such a district "for the purpose of financing. . . . redevelopment projects" (id. at § 1 (a), supra), and defining a "redevelopment project" as:
 an undertaking for eliminating, or preventing the development or spread of, slums or blighted, deteriorated, or deteriorating areas, for discouraging the loss of commerce, industry, or employment, or for increasing employment, or any combination thereof, as may be determined by the General Assembly.
Id. at § 1 (c).
As you can see, the criteria for a redevelopment plan are quite broad. There is no indication from this language that an "undertaking" is limited to property that has been developed.
Turning then to the enabling legislation, Act 1197 of 2001 defines the term "redevelopment district" as:
 . . . . a contiguous geographic area within a city or county in which a redevelopment project will be undertaken, as defined and created by ordinance of the local governing body[.]"
A.C.A. § 14-168-301 (12).
Similar to Amendment 78, there is nothing in this definition, other than the term "redevelopment," that might suggest that an undeveloped area cannot be developed as a "redevelopment district." Act 1197 also restates Amendment 78's definition of "redevelopment project" (§ 14-168-301
(13)(A), see Amend. 78, § 1 (c), supra), and then continues by providing that a "redevelopment project may include one (1) or more of the following:
 (i) The acquisition of land and improvements, if any, within the redevelopment district and clearance of the land so acquired; or
 (ii) The development, redevelopment, revitalization, or conservation of the project area whenever necessary to provide land for needed public facilities, public housing, or industrial or commercial development or revitalization, to eliminate unhealthful, unsanitary, or unsafe conditions, to lessen density, mitigate or eliminate traffic congestion, reduce traffic hazards, eliminate obsolete or other uses detrimental to the public welfare, or otherwise remove or prevent the spread of blight or deterioration; or
 (C) The financial or other assistance in the relocation of persons arid organizations displaced as a result of carrying out the redevelopment project and other improvements necessary for carrying out the project plan, together with such site improvements as are necessary for the preparation of any sites and making any land or improvements acquired in the project area available, by sale or by lease, for public housing or for development, redevelopment, or rehabilitation by private enterprise for commercial or industrial uses in accordance with the plan;
 (D) The construction of capital improvements within a redevelopment district designed to alleviate deteriorating conditions or a blighted area or designed to increase or enhance the development of commerce, industry, or housing within the redevelopment district; or
 (E) Any other projects the local governing body deems appropriate to carry out the purposes of this subchapter[.]"
A.C.A. § 14-168-301 (13) (B) — (E).
An examination of this language yields no support for the proposition that an undeveloped area cannot qualify as a redevelopment district for purposes of financing a redevelopment project as contemplated by Amendment 78. Indeed, these provisions envision land acquisition, property development, and/or capital improvements as falling within the scope of authorized projects. Amendment 78 grants substantial discretion to the General Assembly to implement its provisions. Accord Op. Att'y Gen.2001-295. In my opinion, the enactment of § 14-168-301(A) — (E) was within the General Assembly's general grant of authority to implement Amendment 78 (§ 1(g), supra), as well as its specific authority to further define "development projects." Ark. Const. Amend. 78, § 1(c),supra.
In conclusion, therefore, it is my opinion that as a general proposition, an undeveloped area can qualify as a redevelopment district under Amendment 78 and A.C.A. § 14-168-301 et seq.
Question 2 — Does the Bass Pro Shop Redevelopment District as establishedby the Little Rock City Board at the April 1, 2003, meeting qualify forthe Redevelopment District as defined by Act 1197 of 2001 since theproperty has never been developed?
As indicated above, it is my opinion that property is not disqualified from "redevelopment" under Amendment 78 and its implementing legislation merely because it is not part of an existing, developed area. Accordingly, the fact that the property has "never been developed," as you state, would not alone prevent the creation of this redevelopment district, in my opinion.
Whether the Bass Pro Redevelopment District was otherwise properly established (see Ordinance No. 18, 849 of the City of Little Rock (April 1, 2003)), presents a question that is outside the scope of an Attorney General's opinion. I am not empowered as a fact finder in the issuance of official opinions, and thus cannot undertake the necessary review to determine whether all applicable requirements were met. Arkansas Code Annotated § 14-168-305 (Supp. 2001), which sets out the general requirements for creating a redevelopment district pursuant to Amendment 78, should be referenced in this regard.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Section 1 (g) of Amendment 78 states that "[t]he General Assembly shall provide for the implementation of this section by law."
[2] See A.C.A. § 14-168-312 (Supp. 2001) regarding the calculation and division of tax monies in a redevelopment district.