### ARKANSAS INSURANCE COMPANY v. BOSTICK & RYAN.

POLICIES OF INSURANCE—*What the words "lost or not lost" evidence.*—Insurers can, if such be the intention and agreement, make themselves responsible for a loss which has already happened when the policy is made, even if that loss be total and the subject matter of the insurance is then non-existent, and this intention is expressly evidenced by the clause "lost or not lost," in the policy.

SAME—*When contract of insurance becomes complete.*—The contract of insurance, on an open or running policy, does not become complete until a declaration of a desire to insure is made by the assured, and until this is done the contract is incohate and incomplete, and if not made at all, the risk will be regarded as not having commenced.

SAME—*What will not work a forfeiture.*—The fact that, in the application for insurance and the policy, it is understood that the assured are to insure all goods consigned to or shipped by them, in the company, will not, of itself, on the failure of the assured so to do, work a forfeiture of the policy, unless such were the *express* terms of the instrument.

SAME—*When act of agent works estoppel.*—Where goods were reported to the agent of an insurance company as having been shipped from a given point, and the agent, by agreement with the assured, entered them as having been shipped from an intermediate way point, whatever may have been the requirements in this respect in the policy, the company will be estopped by the act of their agent from setting up this supposed deviation as a ground of defense.

APPEAL FROM PULASKI CIRCUIT COURT.

HON. JOHN WHYTOCK, *Circuit Judge.*

*Benjamin & Barnes,* for Appellant.

We submit:

*First.* That where a party takes out an open policy of insurance, and his application is an agreement that he will insure all property shipped and belonging to him during the existence of said policy, and fails to do so, it avoids and vitiates the policy, is a fraud on the company and they are entitled to cancel the policy as soon as they find it out. *Sec.* 2 *Parsons on Maritime Laws, p.* 153–4–59, *and cases cited ; Demistown vs. Lillie,* 3 *Bligh,* 232.

*Second.* That the appellees holding an open policy of insurance, requiring them to insure from the port where the goods are shipped, their application for insurance from an intermediate point was a fraud upon the company, and the company had a right to reject their application for insurance and cancel the policy. *See Hodgeson vs. Richardson,* 1 *Bl.,* 463; *Reid vs. Harvey,* 4 *Dow,* 97 ; *Selan vs. Law,* 1 *Johns.'* cases, 1; *Nanderharavel vs. United States Ins. Co.,* 2 *Johns.,* 451 ; *Palmer vs. Warren Ins. Co.,* 1 *Story,* 360.

*Third.* That the application for insurance being after the loss, and from a way or intermediate point, the company had a right to reject the application. *See Danville vs. Mutual Ins. Co.,* 12 *La. An.* 251 ; *Orient Ins. Co. vs. Wright,* 23 *How.* (*U. S.*) 401.

*Clark & Williams,* for Appellees.

We submit:

*First.* That the fact that the goods were lost before the shipment of them was reported to the agent of the company, would not prevent the plaintiffs from recovering. See *Davenport vs. Peoria Ins. Co.,* 17 *Iowa,* 276 ; *Kelley vs. Commonwealth Ins. Co.,* 10 *Bosw.,* (*N. Y.*) 82; 2 *Parsons on Cont.,* 364, 368 ; *Paddock vs. Franklin Ins. Co.,* 11 *Pick.,* 227; *Orient Mut. Ins. Co. vs. Wright,* 23 *How. U. S.,* 401, 406, 411; *Mark vs. Etna Ins. Co.,* 29 *Ind.,* 390; 1 *Phillips Ins. chap.* 5, *sec.* 2, *p.* 25.

*Second.* In the absence of an express stipulation to that effect in the policy, the fact that plaintiffs did make other shipments not insured in the company, would not vitiate their policy. See *Danville vs. Sun Ins. Co.,* 12 *La. An.* 259; *Orient Ins. Co. vs. Wright et al.,* 23 *How., U. S.,* 401, 411 ; *E. Carrier Co. vs. Manufact. Ins. Co.,* 6 *Gray (Mass.),* 214 ; *N. Y. Ins. Co. vs. Roberts,* 4 *Duer,* 141 ; *Parsons on Conts.,* 368, 396.

Bennett J.—This was an action on what is called an open or running policy of insurance; trial had; verdict and judgment in favor of Bostick & Ryan; motion for a new trial by defendants overruled, and appeal granted.

The facts in the case, as appear on and admitted in the bill of exceptions, are as follows: The plaintiffs below, Bostick & Ryan, were manufacturers of tobacco at Fort Smith, Arkansas, and in the Indian country, west of Arkansas. On the first of May, 1868, they took out and received from the defendants, the Insurance Company, an open policy, or, what is sometimes called a running policy of insurance, which was to continue for one year from that date. About the first of April, 1869, Bostick & Ryan ordered a shipment of tobacco from Leopold & Co., of Louisville, Kentucky, which was, by Leopold & Co., shipped on board the steamboat "G. A. Thompson," which was a good and insurable boat, and was then bound for Fort Smith. The invoice of these goods was received by Bostick, one of the firm of Bostick & Ryan, the consignees, at Fort Smith, on Sunday, the 11th day of April, 1869, and, on Monday the 12th, immediately after breakfast hours, he (Bostick) reported the shipment to James H. Sparks, who was the acting and accredited agent of the company at that place, for the purpose of being indorsed as insured under the policy. Sparks examined the invoice, and asked Bostick whether he desired the goods to be insured from Louisville, or only from Memphis, when Bostick said he was satisfied to have them take the risk only from Memphis, or words to that effect. Whereupon, Sparks indorsed the goods as insured, under the policy, from Memphis to Fort Smith, and forwarded the application or report to William H. Fulton, secretary of the company, at Little Rock, and which reached the secretary on the 14th of April. The "G. A. Thompson," with these goods on board, proceeded along her voyage, passed Memphis, entered the Arkansas river, and proceeded to a point about forty miles up the river (below Little Rock), where she struck a snag, sunk and was burned, and the goods were a total loss. The boat was lost during the night of the 9th, or early in the morning of the 10th of April; and it was proven that the loss occurred by the perils insured against. The loss was fully known to the company at Little

Rock when Bostick's report or application was received from the agent, Sparks, on the 14th of April, but was not known to either Sparks or Bostick, or to any of the plaintiffs at the time Bostick reported the goods to Sparks for insurance, as aforesaid, on the 12th day of April. When Fulton, the secretary, received the report from Sparks it was regularly spread upon the book of risks, but there was a protest against allowing the insurance or paying the claim by members of the company; but it was agreed that it should be spread upon the books (which was the regular course according to the rules and the course of business of the company, for all such reports of goods insured) until the plaintiffs should have notice, in order that they might have a hearing on the question of rejecting the application and refusing the insurance. Afterwards, the report was rejected, the insurance set aside and the plaintiffs' policy cancelled by the board of directors of the company, and the plaintiffs' claim for pay for the value of the goods was rejected and refused, and notice of this was served on the plaintiffs through the agent of the company, Sparks, at Fort Smith, on the 26th day of July, 1869. But previous to receiving this notice, plaintiffs had shipped other goods and reported them to Sparks in the same manner for insurance under the policy, and Sparks had received them, charged up the premiums and forwarded them to the secretary at Little Rock, and they were duly entered on the book of risks, but were afterwards set aside, together with the setting aside of the risks on the lost goods, as aforesaid. At the time of reporting the goods to Sparks for insurance, no premiums were paid, but were charged up by Sparks to plaintiffs in a regular account book which he kept for that purpose; and it was the regular custom of the company, with those who held policies of this kind, to charge up the premiums on the report of shipment of goods, and the account of premiums were collected quarterly. It was further proven that the plaintiffs, after taking out this policy and before the shipment of the goods which were lost, made two or three

other small shipments of goods which they did not report to the company, and the company did not receive premiums on them; they did this with a view of taking the risk of these small shipments themselves. It was further proven that one shipment of goods made by them, after the issuing of the policy and before the shipment of the lost goods, was insured in another company, at Louisville; but that shipment was made by the order of the plaintiffs, sent by mail, and the insurance in the other company was effected by the consignors, in Louisville, unknown to the plaintiffs, and the plaintiffs, on receiving the invoices, reported the goods, as usual, to the company, through the agent, Sparks, and the premium was regularly charged and paid to defendant by plaintiffs. Further, it was proven that the goods lost were worth the invoice price, to-wit: $1000. Further, it was proven, by the rules and regulations of the company, that persons holding open policies of the company were required to report their goods immediately on receiving the invoices, but not at the time the shipment was made, except when the policy holder was the consignor.

The bill of exceptions and motion for a new trial present but three material points for adjudication.

*First.* It is contended that the company are not liable on their policy, because the goods were lost before the shipment of them was reported to Sparks, the agent, or the company's officer at Little Rock, Arkansas.

An indorsement upon the policy requires a report of each shipment to be made to the office of the company, at Little Rock, Arkansas, by mail or otherwise the same day the shipment is made, or, if on goods and merchandise to be received, the same day advice or the invoice of the shipment comes to hand, for entry on the office records and for protection purposes.

In the body of the policy is found the following stipulation: "That the Arkansas Fire, Marine, Life, Accident and General Insurance Company do, by these presents, cause Bostick & Ryan to be insured, *lost or not lost, etc.*"

In the determination of our first proposition, it will be necessary to fully understand the meaning and import of the clause "lost or not lost." Policies are frequently effected, not only on ships and goods in home ports, but on those, also, which are in foreign ports, or actually at sea on their way either to this or other countries, and with regard to which, it is, of course, uncertain whether they may not actually have been lost before the policy was effected. These words have been inserted in all marine insurance. Arnold, in his work on *Insurance*, vol. 1, *p*. 26, says: "This clause, however, though never omitted, does not appear to be strictly necessary, as there can be no reason why a previous loss of the subject insured should prejudice an insurance subsequently effected, if both the assured and the underwriters were equally ignorant of the loss at the time." This opinion of the author is sustained by Marshall, in his work on *Insurance*, *pp.* 338, 340, 1 *Phill. Ins.* 72, 438; 3 *Kent* (6 *ed.*) 258, *note c.*

It was decided by Lord Denman, in the case of *Mead vs. Davidson*, 3 *Ad. and Ell. p.* 303, that a policy containing this clause was good when the subject of insurance was accepted for insurance and the premium paid before loss, although the policy was not executed until *after* a loss had happened to the knowledge both of the assured and underwriter.

Phillips, in his work on *Insurance*, vol. 1, *p.* 925, says: "The risk may be assumed by the underwriters for an anterior period, and cover losses prior to the date of the policy, provided there is no concealment or misrepresentation by either party. For this purpose, the clause 'lost or not lost' is introduced. But this clause is not necessary; it is sufficient, if it appear by the description of the risk and the subject of the contract, that the policy is intended to cover previous losses."

It is, then, evident that insurers can, if such be the intention and agreement, make themselves responsible for a loss which has already happened when the policy is made, even if that loss be total; so that the subject matter of insurance is then non-existent, and this intention is expressly evidenced by the clause "lost or not lost," in the policy.

The material question then, presented under this proposition is, whether or not the company were under a contract, within any of the terms and conditions of the policy, to insure the goods at the time the loss occurred. This contract of insurance arises out of an open or running policy, which, from the very nature of such policies, enables merchants, etc., to insure goods shipped at a distant point, when it is impossible for him to be advised of the particular boat, or all the circumstances attending the shipment at first. The contract, however, does not become complete until a declaration of his desire to insure is made by the assured. Until this is done, the contract is inchoate and incomplete, and, if not made at all, the risk is regarded as not having commenced. Was such a declaration made by the plaintiffs in the case before us? We think there can be no dispute as to that fact. It is shown by the testimony, that the invoice of the goods were received on Sunday, April 11, 1869, by Bostick, one of the firm of Bostick & Ryan, and on Monday, the 12th, immediately after breakfast hours, he, Bostick, reported the shipment to James H. Sparks, who was the acting and accredited agent of the company, and such invoice was received by him at that time, and the amount of premium charged to Bostick & Ryan, as was the usual custom of the agency at Fort Smith. Applying the principles of law regulating policies of this kind, and the requisite act necessary to be done by the assured and the company, we are confident the company are liable under their policy, whether the goods were "lost or not lost" at the time the insurance was effected, unless the policy had been rendered null and void by previous act of the parties. The principles of law and rules of construction governing policies of this description appear to be well settled, as may be seen by reference to the authorities collected in the text writers, and by the following leading cases: *Hammond vs. Peoria Ins. Co.*, 17, *Iowa*, 276; *Kelly vs. Commonwealth Ins. Co.*, 10, *Bos. N. Y.*, 821; *Paddock vs. Franklin Ins. Co.*, 11, *Pick.* 227; *Orient Mutual Ins. Co. vs. Wright*, 23, *How*, (*U. S.*) 401; *Mark vs. Ætna*

35

*Ins. Co.* 29, *Ind.* 390 ; *E. Carver & Co. vs. Manufacturing Ins. Co.*, 6, *Gray*, 215.

The second point raised by the pleading and facts is : Was the policy rendered nugatory by the previous act of the plaintiffs in not insuring all the goods consigned or received by them under the policy ?

It is conceded that plaintiffs did make several shipments of goods which they did not report to the company, and upon which they did not receive premiums, and it was further proven that the plaintiffs did insure one shipment of goods in another company, but such insurance was effected by the consignors of the goods, and not by the procurement of the plaintiffs.

Conceding, for the purpose of argument, that, in the application for insurance and the policy, it was understood that the plaintiffs were to insure all the goods consigned to or shipped by them in this company, a failure on the part of the plaintiffs to do so, would not work a forfeiture of the policy, unless such were the express terms of that instrument. Such a provision would doubtless be a condition precedent, the performance of which by the plaintiffs would be indispensable to their right of recovery, unless it had been dispensed with or waived by the defendant. *Inman vs. Western Ins. Co.* 12, *Wend.* 460.

It is only when a duty is created by the law that renders a contract void by non-performance of some requirement, and not when the duty is created by implication by the contract. *Harmony vs. Bingham*, 2 *Kern*, 99. Under this policy of insurance, the duty of the plaintiff may have been to report for insurance all goods shipped to them ; but this duty was created by the contract, which does not fix a penalty for the failure to do so, and the law of insurance will not arbitrarily say it, *ipso facto*, works a forfeiture. Even if this was the general principle, in the case before us, the facts will justify us in saying the company have waived all rights to this defense.

Bostick reported the shipment to James II. Sparks, an ac-

credited and acting agent of the company, at the place where he resided, for the purpose of having the shipment indorsed as insured under this policy. Sparks, the agent, indorsed them as insured. From that moment the company were liable for any loss that might have or had occurred. The agent reported the application to the home office, at Little Rock, as he was required to do by the indorsement of the policy, "for entry on the office records, and for protection purposes."

The words "protection purposes," to be found in the indorsement, can not be construed to mean that the company might receive or refuse the application upon arrival. It was not the intention or understanding between the parties, at the time of taking out the policy, or when the insurance was effected. Sparks was acting as the agent of the company, at Fort Smith, with general powers. The validity of his acts to third persons did not depend upon the approval of the company. Nor can they secretly reserve the right of approval or disapproval, at a future period. The company have not the power to say, by their agent, to a person desiring insurance, "your shipment is insured," and leave him under that impression until after a loss has happened, and then say to him, that their election has not been made. Honesty and fair dealing forbid it.

If there had been any previous dereliction on the part of the plaintiffs in reporting shipments or payment of premiums previous to this transaction, the act of the company's agent, in insuring this one, must be considered as a waiver of it so far as the insurance of this is concerned. As to whether the plaintiffs are not liable to pay premiums on all goods shipped by them during the life of the open policy we are not called upon to decide, but that non-payment of them works a forfeiture of the policy on this shipment, we deny. There is not even a provision in the policy or application to this effect, and the law will not certainly annex one for the parties.

The third point for adjudication is, whether the goods were insured under the policy, as they were shipped from Louisville, Kentucky, and reported and indorsed for insurance from Memphis, a way port.

The evidence shows that the goods were reported to the agent, Sparks, as shipped from Louisville, and the agent entered them, by agreement between him and Bostick, as insured from Memphis. The insurance from Memphis was the proposition of Sparks, the agent, and whatever may have been the requirements in this respect, in the policy, we are clearly of the opinion that the defendants are estopped in the present case, from any supposed deviation, as a ground of defense by the act of their agent. By this act the plaintiffs had a right to regard any objections on this ground, as waived, when there was no concealment on their part as to where the goods were shipped from. Certainly, it cannot be allowed as a defense to this action without operating as in the nature of a fraud on the plaintiffs, who have acted on the belief that the acts of the agent were the acts of the company, and who, knowing all the circumstances, indorsed the goods from Memphis instead of from Louisville.

Having fully considered all the propositions, as raised in the trial of the case, and finding no error, the judgment is in all things affirmed.