David DODDS and Vicki Dodds *v.*
HANOVER INSURANCE COMPANY

93-1152                                        880 S.W.2d 311

Supreme Court of Arkansas
Opinion delivered July 11, 1994

*Gary Eubanks & Associates*, by: *James Gerard Schultze* and *Robert L. Gross*, for appellants.

*Wright, Chaney, Berry & Daniel, P.A.*, by: *William G. Wright*, for appellee.

TOM GLAZE, Justice. Around March 28, 1989, appellants David and Vicki Dodds contacted Thomas H. Humphreys, III, a salesman for Hadfield & Williams Insurance Company, an independent insurance brokerage firm in Little Rock. Mrs. Dodds requested that Humphreys procure insurance coverage on the Doddses' property located in Vilonia, Arkansas. The property included a workshop used in Mr. Dodds' business of building cabinets and furniture. Humphreys submitted applications for insurance on the Doddses' behalf to a number of companies, but the Doddses obtained no insurance either because no insurer would cover the type risk involved or because the Doddses were unwilling to pay the amount of premium an insurer asked for such coverage.

On May 22, 1989, representatives of appellee Hanover Insurance Company visited the offices of Hadfield & Williams for the purpose of establishing a business relationship. Hanover is an Oklahoma corporation authorized to do business in Arkansas. During that visit, Humphreys discussed the Doddses' situation, and Hanover agreed to review their application and give Humphreys a quote on such coverage. Humphreys completed the Doddses' application, and submitted it to Hanover that same day. The application provided for an effective policy date of June 1, 1989, the date Hanover and Hadfield & Williams expected to begin doing business together. The application required the applicant to list all claims or occurrences which might have given rise to a claim during the previous five years, and Humphreys responded "none."

On June 1, 1989, a windstorm damaged the Doddses' building in Vilonia. On June 2, Mrs. Dodds informed Humphreys by telephone of the damage, but Humphreys did not notify Hanover of the loss at that time. On June 5, Mrs. Dodds sent a premium installment payment of $453 payable to the order of Hadfield & Williams, and on June 29, Hanover issued a policy on the Vilonia property effective June 1, 1989. The contract of insurance was on a Hanover form with Hadfield & Williams listed as agent and Humphreys signing as authorized representative. Over the subsequent months, the Doddses paid the total premium amount

of $1844. In May 1990, Humphreys finally notified Hanover of the damage to the Doddses' property that occurred on June 1, 1989. Hanover investigated the claim, and denied it by letter dated July 17, 1990.

The Doddses filed suit against Hanover for breach of insurance contract and the tort of bad faith, alleging $128,000 in damages. Hanover filed a motion for summary judgment claiming the insurance policy was void from its inception for lack of mutuality and fraudulent concealment, and alleging Humphreys was the agent of the Doddses in procurement of the policy. On March 26, 1993, the trial court entered an order granting Hanover's motion of summary judgment and dismissing the Doddses' action. The trial court found the Doddses were under a continuing duty of good faith to notify Hanover of the loss prior to Hanover's acceptance of the risk. It further held that Humphreys was the agent of the Doddses for purposes of disclosing the property damage, and the Doddses' failure in notifying Hanover prior to the issuance of the policy amounted to concealment, thus voiding the policy. The Doddses appeal from that order of summary judgment.

Summary judgment is a remedy that should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Wyatt* v. *St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). On appellate review, this court must only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leaves a material question of fact unanswered. *Reynolds* v. *Shelter Mutual Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Wyatt*, 313 Ark. 547. Only when the movant makes a prima facie showing of entitlement does the burden shift, and then the respondent must meet proof with proof by showing genuine issue as to a material fact. *Id.*

While agency is normally a question of fact to be determined by the trier of fact, it becomes a question of law when the facts are undisputed, and only one inference can reasonably be drawn from them. *Jumper* v. *L & M Transport, Inc.*, 296 Ark.

319, 756 S.W.2d 901 (1988); *Fireman's Transportation Ins. Co.* v. *Leftwich*, 192 Ark. 159, 90 S.W.2d 497 (1936). Here, both parties agree that an agency relationship existed.[1] The dispute centers on what type of agency relationship and with which party that relationship existed. While Hanover argued Humphreys was no more than a soliciting agent and, as such, was the agent of the Doddses, the Doddses merely argued Humphreys was the agent of Hanover.

■ The Doddses, citing *Travelers Indemnity Co.* v. *National Indemnity Co.*, 292 F.2d 214 (8th Cir. 1961), recognize the rule that a broker is primarily the agent of the person who first employs him, and where he is employed to procure insurance, he is the agent of the person for whom the insurance is procured. However, they further point out that under special circumstances, the broker may be converted to the insurance company's agent through some action taken on the part of the company or facts that may have arisen from which the broker's authority to represent the company as an agent may be fairly inferred. *See also Cheatham* v. *100% Certain Underwriters at Lloyds*, 783 F.Supp. 1174 (E.D. Ark. 1991).

Here, the Doddses argue such special circumstances do exist, namely, (1) Humphreys and his firm began representing Hanover effective June 1, 1989, and (2) Hanover provided Humphreys with policy forms and permitted him to sign the forms as its authorized representative. The Doddses contend that in view of these actions taken by Hanover, it was not unreasonable for them to assume Humphreys was the one they should notify of their June 1, 1989 loss. Likewise, they say it was reasonable to expect that Humphreys would in turn notify Hanover of the loss. Of course, Humphreys, for whatever reason, failed to promptly inform Hanover of the Doddses' loss. Hanover, unaware of the loss, issued its policy twenty-eight days later.

■ Hanover relies upon the general rule that an insurer is liable for a loss under a backdated policy only when the loss occurs between the time the policy became effective and the time

[1]Hanover offered other arguments which had nothing or little to do with the issue of agency, but, holding as we do, we need not consider these arguments in this opinion.

the policy is issued, and both the insured and the insurer are ignorant of the loss when the policy is issued. 4 J. Appleman, *Insurance Law and Practice*, § 2291 (2nd ed. 1969); *Arkansas Insurance Co.* v. *Bostick & Ryan*, 27 Ark. 539 (1872). Conversely, if the insured knows of the loss at the time the insurance is effected but the underwriters are ignorant of the loss, the insurer is not liable.

Hanover emphasizes that no temporary binder of insurance had been requested or issued in this case, nor did it ever specifically accept the Doddses' loss which pre-existed issuance of Hanover's policy. Hanover further relies on the generally accepted rule *uberrima fides* which requires an insurance applicant to use due and reasonable diligence to disclose all facts affecting the risk which arise subsequent to the application and prior to the completion of the contract. *See 9 Couch on Insurance 2d* § 38:21 (Rev. ed. 1985); *Springfield Fire & Marine Ins. Co.* v. *National Fire Ins. Co.*, 51 F.2d 714 (8th Cir. 1931).

The Doddses make no attempt to challenge the authority or rules relied on by Hanover, but do take issue with their applicability to the facts presented in this cause. They basically claim they met their *uberrima fides* obligations by having notified Humphreys of their loss on June 2, 1989 — well before the Hanover policy was issued on June 29, 1989. As touched on earlier, the linchpin of the Doddses' argument is that Humphreys was Hanover's agent and that he at least had apparent authority to receive notice of the Doddses' loss after the application had been submitted. Too, the Doddses submit that they should have been able to rely on Humphreys to forward notice of their loss to Hanover.

The Doddses' argument largely ignores whether Humphreys was a soliciting agent or a general agent — a distinction of major significance, considering the circumstances in this case. A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, and to change or modify the terms of existing contracts. A soliciting agent is ordinarily authorized to sell insurance, to receive applications and forward them to the company or its general agent, to deliver policies when issued and to collect premiums. *Holland* v. *Interstate Fire Ins. Co.*, 229 Ark. 491, 316 S.W.2d

707 (1958). In addition, a soliciting agent has no authority to agree upon the terms of the policies or to change or waive those terms, nor can his knowledge be imputed to the company he represents. *Id. See also Continental Ins. Cos.* v. *Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978). While the Doddses would like to conclude their argument merely by labeling Humphreys "an agent of Hanover's," we are unable to do so, primarily because Hanover and the trial court dealt with this general/soliciting agent issue in the summary judgment motion, and Hanover now argues it on appeal.

As established by the above case law, if Humphreys was merely a soliciting agent for Hanover, his knowledge of the Doddses' loss, pre-existing issuance of the policy, was not imputed to Hanover. In other words, Hanover neither received constructive notice nor actual notice of the Doddses' loss prior to the issuance of the policy. Accordingly, Hanover, under controlling law discussed hereinabove, would not be liable under the back-dated policy issued to the Doddses since it was unaware of the Doddses' loss before the policy's issuance.

For the Doddses to prevail against Hanover in this matter, it was incumbent upon them to present evidence indicating Humphreys was a general agent, thereby possessing the authority to accept risks for Hanover and to change or modify the terms of Hanover's policies. *See Holland*, 229 Ark. at 493, 316 S.W.2d at 709. *See also American Nat. Ins. Co.* v. *Laird*, 228 Ark. 812, 311 S.W.2d 313 (1958). The Doddses failed to meet that burden. Hanover, on the other hand, submitted the affidavit of its underwriter supervisor, George K. Blair, who attested it was material to Hanover's issuance of the Dodds policy that the Doddses' application indicated that no incidences had occurred to their property within the last five years that could have given rise to a claim. Further, Blair stated unequivocally that Hanover would not have issued the policy on June 29, 1989, if it had known of the damage which had occurred on June 1, 1989. He also averred that no underwriter at Hanover, including himself, had authority to issue policies on structures "which are in a recent state of destruction as a result [of] a risk Hanover insures against." With this affidavit provided by Hanover, it became the Doddses' burden to meet proof with proof and to show that Humphreys was authorized to accept such a risk on behalf of Hanover. *See*

*Wyatt*, 315 Ark. 547, 868 S.W.2d 505. With no further proof on this issue, the trial court concluded that the undisputed facts showed that neither Humphreys nor any Hanover underwriter had the authority to issue an insurance policy covering property which had already been destroyed and that Hanover, the insurer, had no knowledge of it. Based upon the law and proof presented below, we hold the trial court ruled correctly on this point.

In conclusion, we note the Doddses' reliance upon the two cases of *Hal H. Peel & Co.* v. *Hawkins*, 175 Ark. 806, 300 S.W.2d 420 (1927), and *Springfield Mutual Ass'n* v. *Atnip*, 169 Ark. 968, 279 S.W. 15 (1925). Citing *Hawkins* and *Atnip*, the Doddses contend that, when an insurer authorizes an agent to act on its behalf, an insurance buyer can presume, in the absence of notice to the contrary, that the agent has the authority of a general agent.

In prior discussion, we thoroughly discussed the distinction between soliciting and general agents and that only a general agent is authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, and to change or modify the terms of existing policies. Here, the Doddses admittedly had worked with Humphreys for two months in trying, without success, to obtain an insurer that would accept the risk posed by the Doddses having a dwelling which contained a business. The Doddses were well aware that Humphreys' status was not one that permitted him to authorize insuring such a risk. The Doddses' own testimony reflects that they knew Humphreys' limited or special status. They knew Humphreys procured home insurance, he had been authorized to place insurance with Hanover, he had submitted the Doddses' application to Hanover, he said that the Doddses' home had coverage, and he had issued and signed as authorized representative on a Hanover policy.

Undoubtedly, Humphreys' actions may well have misled the Doddses, but they were well aware Humphreys had no independent authority to accept risks, much less one which would bind Hanover on a pre-existing loss of which it had no knowledge. The record reflects that the Doddses knew full well that Humphreys could procure and place insurance coverage. At most the proof submitted by the parties showed Humphreys was either Hanover's soliciting agent or at the least (as found by the court) he was the soliciting agent of the Doddses. Either way, the

Doddses knew they were dealing with someone who took and forwarded insurance applications to an insurer that must approve and accept risks. In these circumstances, the Doddses could not presume Humphreys had the authority of a general agent.

For the reasons above, we affirm the trial court's decision.