**UNITED STATES FIDELITY & GUARANTY COMPANY,**
Plaintiff,

v.

**ALLIANCE INSURANCE GROUP OF ARKADELPHIA, INC., d/b/a Alliance Insurance Group; and Adam Guthrie, Jr., Defendants.**

No. 98–4079.

United States District Court,
W.D. Arkansas,
Texarkana Division.

Nov. 2, 2000.

Gil Rogers, Robert D. Trammell, Trammell Law Firm, Little Rock, AR, for Plaintiff.

William Wright, Rodney P. Moore, Wright Chaney, Berry, Daniel, Hughes & Moore, P.A., Arkadelphia, AR, for Defendants.

## MEMORANDUM OPINION

BARNES, District Judge.

Before the Court is a motion for summary judgment by Defendants Alliance Insurance Group and Adam Guthrie (hereinafter "Alliance"). The Plaintiff United States Fidelity and Guaranty (hereinafter "Fidelity") has responded to the motion and filed its own motion for summary judgment. Alliance has responded to Fidelity's motion.

## BACKGROUND

Both parties were originally defendants in a lawsuit brought by the Prescott School District (hereinafter "PSD") regarding a fire insurance policy. Fidelity settled that case with PSD for approximately $800,000. Fidelity now alleges unauthorized representations and breach of contract by its agent Alliance and seeks indemnity and contribution from Alliance. Alliance denies any wrongdoing.

Fidelity and Alliance executed an independent agency agreement, effective on April 1, 1995. (Plaintiff's Exhibit B—Independent Agency Agreement). Section III.A provides that Fidelity will indemnify Alliance from and against all third party claims, liabilities, judgments or settlements arising out of the relationship of the parties under the terms of the agreement. (Plaintiff's Exhibit B—Independent Agency Agreement, p. 3). The Agreement does not provide for indemnity of Fidelity by Alliance. Section IH also provides that the agent's authority is subject to compliance with Fidelity's underwriting rules and regulations. (Plaintiff's Exhibit B—Independent Agency Agreement, p. 2). Fidelity argues that Adam Guthrie, the independent agent at Alliance, misrepresented to members of the PSD School Board that someone from Fidelity would verify the property values to make sure the school district was buying the proper amount of

insurance. (Defendant's Exhibit 5—Transcript of School Board Meeting, p. 10). Fidelity characterizes Guthrie's statement as adding a term to the policy, and acting outside the scope of his authority under the independent agency agreement. Alliance argues that Guthrie simply informed the board members about its "value-added services" by telling them about this feature of Fidelity's loss control program and simply did his job as an agent to market Fidelity's products.

In order to make sure that an insurance policy adequately covers the property and will not expose the insureds to co-insurance penalties, it is important to do an "insurance-to-value" calculation (hereinafter "ITV"). (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 42–43). An ITV calculation will show how much insurance is being requested per square foot of property. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 43). Fidelity did not do an ITV for the PSD policy. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 36).

Randy Ginn was a casualty supervisor underwriter for Fidelity until August 1995 when he became managing account executive. (Defendant's Exhibit 2—Dep. of Randy Ginn, p. 9). Ginn was responsible for calculating the ITV on this policy request. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 25). Fidelity instructs its underwriters to do building valuations. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 83). Ginn stated that it would have taken him 30 minutes to do an ITV calculation on the 24 pieces of real property. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 106). Ginn accepts responsibility for not doing a building valuation. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 83). Ginn stated that if the ITV had been done, the co-insurance penalty, which was the subject of the original lawsuit, would not have arisen. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 107). Ginn stated that he would have agreed to insure PSD for an increased amount if one had been requested. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 12). Ginn explained that an ITV calculation is beneficial for both parties to the insurance policy; the insurance company can receive higher premiums if a higher insurance limit is carried, and the insured will avoid co-insurance penalties. (Defendant's Exhibit 3—Dep. of Randy Ginn, p. 42–43).

Steven Petersen, commercial business manager for Fidelity in Arkansas, stated that the agents should know that an ITV calculation is part of Fidelity's evaluation of a policy. (Defendant's Exhibit 1—Dep. of Steven Petersen, p. 6, 79). A Fidelity policy manual stated that ITV calculations were not optional and should be done by the underwriters on all property accounts prior to releasing any quotation. (Defendant's Exhibit 1—Dep. of Steven Petersen, p. 84–85; and Petersen Dep. Exhibit 4, p. 61–62.) Petersen also stated that if an agent told insureds that a Fidelity engineer would visit the property and verify square footages and type of construction, that this statement would be in line with what the underwriters were told by the loss control department. (Defendant's Exhibit 1—Dep. of Steven Petersen, p. 79).

Edward Pratt was a senior risk management consultant in Fidelity's loss control department. (Defendant's Exhibit 4—Dep. of Edward Pratt, p. 8, 10). Pratt explained that it was important for the agents and the insureds to know about loss control services. (Defendant's Exhibit 4—Dep. of Edward Pratt, p. 17–19) The loss control department had a marketing component, and the agents would be expected to communicate the loss control services as a sales tool. (Defendant's Exhibit 4—Dep. of Edward Pratt, p. 17–19, 84–85).

## DISCUSSION

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] dispute about a material fact

is genuine if a reasonable jury could return a verdict in favor of either party." *White v. Farrier,* 849 F.2d 322, 325 (8th Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Although the defendant seeking summary judgment "has the burden of showing that there is no genuine issue of [material] fact, [this does not relieve Plaintiff of his] own burden of producing in turn evidence that would support a jury verdict." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505. If Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the defendant is entitled to summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States,* 600 F.2d 725 (8th Cir.1979), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). The Court of Appeals for the Eighth Circuit has reviewed the burdens of the respective parties in connection with a summary judgment motion. In *Counts v. M.K.–Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988), the court stated:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* '[to] point[ ] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute

on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339, *quoting, City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

### A. Breach of Independent Agency Agreement

▆ Fidelity argues that Alliance agent Guthrie acted as a "general agent" rather than a "soliciting agent" when he informed the board members about the loss control services that Fidelity offered, and thereby breached the Independent Agency Agreement. Fidelity argues that Guthrie was a "mere soliciting agent," and acted outside the scope of his authority.

> In *Dodds v. Hanover Ins. Co.,* 317 Ark. 563, 880 S.W.2d 311 (1994), [the Arkansas Supreme Court] distinguished between a general insurance agent and a soliciting agent: A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, and to change or modify the terms of existing contracts. *A soliciting agent is ordinarily authorized to sell insurance,* to receive applications and forward them to the company or its general agent, to deliver policies when issued and to collect premiums. *Holland v. Interstate Fire Ins. Co.,* 229 Ark. 491, 316 S.W.2d 707 (1958). In addition, a soliciting agent has no authority to agree upon the terms of the policies or to change or waive those terms, nor can his knowledge be imputed to the company he represents. *Id. See also Continental Ins. Cos. v. Stanley,* 263 Ark. 638, 569 S.W.2d 653 (1978).

*Columbia Mut. Cas. Ins. Co. v. Ingraham,* 320 Ark. 408, 410, 896 S.W.2d 903 (1995) (emphasis added). Even as a soliciting agent, Guthrie did not act outside his authorization to sell insurance. Edward Pratt, senior risk management consultant at Fidelity, and Steven Petersen, commer-

cial business manager at Fidelity, both explained that the information that Guthrie presented to PSD was information which they would expect their agents to use in selling Fidelity's products, and that it was a service that underwriting performed. Pratt stated that the loss control department had a marketing component, and that it was important that the agents communicated with the insureds about the loss control services offered.

In its motion, Fidelity points to a portion of Alliance owner Berry Bishop's deposition, in which Bishop "admits" that he was neither authorized to write a policy nor to tell an insured not to worry about a part of the policy, or to verbally modify a policy. Alliance did not do either of these things; Alliance simply delivered the message that Fidelity would value the property to make sure the PSD was buying enough insurance. The record is clear that Fidelity, through Randy Ginn, failed to properly value the property, and that this failure gave rise to the co-insurance penalty issue in the original lawsuit and subsequent settlement by Fidelity. Fidelity's contention that "Guthrie went beyond the bounds of his authority and essentially offered to waive the co-insurance provisions of [Fidelity's] policy" is unsupported.

### B. Indemnity

In the Independent Agency Agreement, Section III.A, Alliance bargained for indemnity against any legal claims arising from the relationship of the parties. The original legal claim brought by PSD against Fidelity, and Alliance in the alternative, was based on the Fidelity insurance policy that Alliance sold to PSD. Fidelity did not make indemnification a part of its bargain with Alliance. Under the contract governing the relationship of these two parties, Fidelity has no right to the indemnity which it is seeking in this lawsuit. In the absence of a contract courts recognize quasi-contractual indemnity. Although an applicable contract does exist in this case, in the exercise of caution,

the Court will discuss quasi-contractual indemnity. In Arkansas, "the doctrine of indemnity is based upon the equitable principles of restitution which permit one who is compelled to pay money, which in justice ought to be paid by another, to recover the sums so paid unless the payor is barred by the wrongful nature of his own conduct." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. First Nat. Bank of Little Rock, Ark.*, 774 F.2d 909, 917 (8th Cir.1985) (quoting *Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 213–14, 600 S.W.2d 1 (1980)). In *Merrill Lynch*, the Eighth Circuit surveyed Arkansas case law and determined that the courts have applied the doctrine of indemnity in three situations where no express contract was applicable: (1) imputed or vicarious liability, (2) obedient servant, and (3) product liability. *See Merrill Lynch*, 774 F.2d 909, 917–18.

The imputed liability cases allow the remedy of indemnity to parties who are liable based on a legal relationship with the party who proximately caused the harm, such as a negligent employee. *See Merrill Lynch*, 774 F.2d 909, 918. If both parties have violated similar duties to the injured party, neither is entitled to indemnity. *See id.* at 918 n. 8 (citing *Fidelity & Casualty Co. of New York v. J.A. Jones Construction Co.*, 325 F.2d 605 (8th Cir. 1963)). The Independent Agency Agreement and Fidelity make clear that Adam Guthrie, the Alliance agent, was an independent soliciting agent, and therefore did not have the power to bind the company to any legal duty. Consequently, Alliance could have no imputed liability through the actions of Guthrie, and quasi-contractual indemnity is not available under the imputed liability theory of quasi-contractual indemnity. Furthermore, as stated above, Alliance was not wrong or unreasonable in its conduct and did not proximately cause the harm to PSD. Therefore, even if a form quasi-contractual indemnity was applicable to this case, Fidelity still would not be entitled to indemnity because it did not proximately cause the harm to PSD.

The second category of cases allow quasi-contractual indemnity to an obedient servant who relies in good faith on the directions or authority of the principal. *See Merrill Lynch*, 774 F.2d 909, 918 (citing, *e.g., Southern Farm Bureau Casualty Insurance Co. v. Gooding*, 263 Ark. 435, 565 S.W.2d 421 (1978)). This theory would not provide indemnity to Fidelity because it was the principal. If either party were entitled to indemnity under an obedient servant theory, Alliance would be because it presented the information it had in good faith. The third category of cases which allow quasi-contractual indemnity applies to products liability and negligent maintenance of premises. *See id.* Clearly this third category does not apply to the relationship between Fidelity and Alliance.

Finally, *Merrill Lynch* requires that the party seeking indemnity show that it was compelled to pay the money it seeks to recover. *See Merrill Lynch*, 774 F.2d 909, 917. Fidelity settled the original lawsuit with PSD and cannot show that it was legally compelled to pay the settlement. Fidelity is not entitled to indemnity under the express contract. Furthermore, Fidelity cannot meet the requirements of any theory of quasi-contractual indemnity. The equitable remedy of indemnity is not available to Fidelity.

## CONCLUSION

No issues of material fact exist for trial. The Defendant's Motion for Summary Judgment is granted on all claims. The Plaintiff's Motion for Summary Judgment is denied on all claims.

IT IS SO ORDERED.