# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1322

———————

PHL Variable Insurance Company     *
                                            *

          Appellee,              *

                                              *    Appeal from the United States

       v.                                  *    District Court for the
                                              *    Eastern District of Arkansas.

Fulbright McNeill, Inc.,                 *

                                              *

          Appellant.             *

———————

Submitted: November 16, 2007
Filed: March 27, 2008

———————

Before RILEY, TASHIMA,[1] and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

      Fulbright McNeill, Inc. (FMI) appeals the district court's[2] grant of summary judgment in favor of PHL Variable Insurance Company ("PHL"). FMI was the beneficiary of a life insurance policy issued by PHL to Keith McNeill. After McNeill's death, PHL sued FMI seeking rescission and cancellation of the policy, arguing that McNeill misrepresented the state of his health when he applied for insurance. The

———————

[1]The Honorable A. Wallace Tashima, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

district court found that McNeill made a material misrepresentation and granted summary judgment in favor of PHL. We affirm.

## I. *Background*

In February 2003, after an annual physical exam, McNeill's personal physician pronounced McNeill healthy. On February 28, 2003, McNeill completed and signed an application for life insurance from PHL. The beneficiary of the policy was FMI, a rubber product manufacturing company located in Wynne, Arkansas in which McNeill owned a 50% interest. The dispute arises from the interpretation of two relevant policy clauses. First, under the heading "Limits on Our Rights to Contest This Policy," the policy stated:

> We rely on all statements made by or for the Insured in the written application or in any supplemental application for reinstatement. These statements are considered to be representations and not warranties. We can contest the validity of this policy for any material representation of fact. However, the misrepresentation must be contained in the written application and a copy of the application must be attached to this policy when issued.

Second, policy modifications had to be approved by PHL. According to the policy terms, "[a]ny change in the provisions of this policy must be signed by one of [PHL's] executive officers to be in effect."

On March 17, 2003, McNeill underwent a paramedic examination and completed and signed Part II of the PHL life insurance policy application. Based on the examination, the paramedic examiner also considered McNeill to be in good health and without heart problems. PHL relied upon the information and answers to the questions in Part II of the application in issuing the McNeill policy.

On April 2, 2003, McNeill voluntarily submitted to a coronary test with a different physician. This test revealed McNeill's total coronary artery calcium score to be 431, placing him at a 90% likelihood of having a heart attack and a high risk of cardiovascular disease. McNeill was personally contacted by the doctor and informed of the results of his testing. Also, the hospital sent a letter with the results to McNeill on April 7, 2003.

On or shortly after June 15, 2003, PHL printed and issued the McNeill policy with an Issue Date of June 15, 2003. On July 11, 2003, the policy was delivered to McNeill. Craig Campbell, PHL's insurance agent, told McNeill that he need not read the acceptance form because the form merely confirmed delivery of the policy. Campbell, however, was wrong. The policy acceptance form actually contained an express affirmation that McNeill's representations regarding his health condition remained unchanged since he completed Part II of the application. The form also acknowledged that the policy acceptance had been incorporated into the policy application and the insurance contract. McNeill signed the acceptance form but did not disclose to PHL the results of the coronary test, which showed his high risk for cardiovascular disease.

McNeill died of a heart attack in January 2004. FMI filed a claim with PHL for payment of the $3,000,000 death benefits under the McNeill policy. After reviewing the claim, PHL refused to pay on the ground that McNeill had made a misrepresentation in his application for the insurance by not disclosing the results of his cardiac tests taken after submission of the insurance application.

PHL filed this declaratory judgment action seeking rescission and cancellation of the policy. Following discovery, both PHL and FMI filed for summary judgment. The district court granted summary judgment to PHL concluding that McNeill misrepresented a material fact in his application for insurance that prohibited recovery under the policy.

## II. *Discussion*

FMI appeals the grant of summary judgment in favor of PHL and argues that there was no material misrepresentation in the policy application. First, FMI argues that McNeill had no duty, either by operation of Arkansas law or under the language of the policy, to inform PHL of the results of his second medical examination; therefore, his failure to do so cannot be a basis to deny FMI benefits. Second, FMI asserts three reasons why PHL cannot rely on McNeill's statements in the policy application to avoid paying FMI's claim for benefits. These include: (1) McNeill's signature was procured by fraud; (2) the acceptance form is not a part of the policy application as it was not properly incorporated under the terms of the contract; and (3) the application was not attached to the policy when it was issued. Upon review, we conclude that McNeill had a duty to inform PHL of the substantial change in his health condition assessment that occurred after he completed the March application. Furthermore, we hold that McNeill's failure to inform PHL of the results of the new coronary test resulted in a material misrepresentation of fact in the written application at the time the policy was issued; therefore, the district court properly granted PHL's motion for summary judgment.

A district court's grant of summary judgment is reviewed de novo. *Palmer v. Arkansas Council on Econ. Educ.*, 154 F.3d 892, 895 (8th Cir. 1998). Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *JN Exploration & Prod. v. Western Gas Res., Inc.*, 153 F.3d 906, 909 (8th Cir. 1998). "When reviewing a grant or denial of summary judgment, this Court considers the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor." *Mettler v. Whitledge*, 165 F.3d 1197, 1200 (8th Cir. 1999).

"Federal district courts sitting in diversity, as the district court in this case, must apply the forum state's substantive law . . . ." *Guardian Fiberglass, Inc. v. Whit Davis*

*Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) (citing *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995)). The United States District Court for the Eastern District of Arkansas correctly chose to apply Arkansas substantive law.

"We begin our analysis by stating the basic principle that an insurance company may retroactively rescind a policy because of fraud or misrepresentation of the insured." *Neill v. Nationwide Mut. Fire Ins. Co.*, 139 S.W.3d 484, 487 (Ark. 2003). Parties, however, may, by contractual agreement, limit the grounds on which an insurance company may challenge the validity of the contract. *See* Ark. Code. Ann. § 23-81-115 (outlawing certain defenses but permitting "any provision which . . . is more favorable to the policyholder than a provision permitted by this section").

Under Arkansas law, when interpreting the language of an insurance policy, "provisions contained in a policy of insurance must be construed most strongly against the insurance company which prepared it, and if a reasonable construction may be given to the contract which would justify recovery, it would be the duty of the court to do so." *U.S. Fidelity & Guar. Co. v. Continental Cas. Co.*, 120 S.W.3d 556, 560 (Ark. 2003).

The policy issued to McNeill authorizes PHL to "contest the validity of this policy for any material representation of fact" as long as it is "contained in the written application." It is undisputed that McNeill did not inform PHL of the substantial change in the assessment of his heart condition. Nor is it disputed that PHL's willingness to insure McNeill's life relied on medical opinion that McNeill had no heart condition. McNeill's failure to inform PHL of the results of his April heart exam constituted a material representation in the policy application and is a sufficient ground on which to affirm the district court's grant of summary judgment.

Arkansas recognizes the common law doctrine of *uberrimae fidei*—which states that, as a matter of utmost good faith and fair dealing, if an applicant for insurance

discovers facts that make portions of his application no longer true while the company deliberates, he must make full disclosure of the newly discovered facts. *See Dodds v. Hanover Ins. Co.*, 880 S.W.2d 311, 314 (Ark. 1994) (recognizing the doctrine as a "generally accepted rule . . . which requires an insurance applicant to use due and reasonable diligence to disclose all facts affecting the risk which arise subsequent to the application and prior to the completion of the contract"); *see also Stipcich v. Metropolitan Life Ins. Co.*, 277 U.S. 311, 316 (1928) (stating that "[i]nsurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option"). Under this utmost good faith doctrine "a statement in the application is a continuing representation or is made as of the time of the delivery of the policy." *Stipcich*, 277 U.S. at 318 n.1; *see also 6 Couch on Insurance* § 87:2 (3d ed. 1995) ("[M]aterial representations as to health made in the application for a life policy are *continuing*, and, if the applicant learns[,]while his . . . application is under consideration[,] that his . . . representations have become untrue, the applicant is under a duty to give the true information to the insurer") (emphasis added).[3]

McNeill's representations in the policy application were continuing until the issuance of the policy. Once McNeill learned the true nature of his health, his statements in the application became false. He failed to modify that false representation before issuance of the policy. Consequently, PHL can assert these misrepresentations as its basis for denying FMI's claim for benefits. McNeill's duty

---

[3]The dissent disagrees with our reading of *Dodds* and argues that the Arkansas courts have not explicitly adopted the doctrine of *uberrimae fidei*. Even if we were to agree with the dissent's reading of *Dodds*, however, *Stipcich* nonetheless still counsels that we take *uberrimae fidei* to be the law of Arkansas because there is an absence of an explicit rejection of this "generally recognized rule." *See Stipcich*, 277 U.S. at 318 ("This generally recognized rule, in the absence of authoritative local decision, we take to be the law of Oregon."); *see also Cohen, Friedlander & Martin Co. v. Mass. Mut. Life Ins. Co.*, 166 F.2d 63, 66 (6th Cir. 1948) (following *Stipcich* and applying the doctrine of *uberrimae fidei* in the absence of state law to the contrary).

to act in good faith during the pendency of his application preexisted and survived any alleged misrepresentation regarding the significance of the acceptance form made by PHL agent Campbell at delivery of the policy.[4]

### III. *Conclusion*

Based on the foregoing, we affirm the judgment of the district court.

RILEY, Circuit Judge, dissenting.

I respectfully dissent. The majority's opinion states, "McNeill's representations in the policy application were continuing until the issuance of the policy. Once McNeill learned the true nature of his health, his statements in the application became false," grounding this conclusion upon a common law duty of utmost good faith owed by McNeill. I disagree, because this approach uses the "duty of utmost good faith" to broaden the explicit policy language.

---

[4]The dissent argues that in failing to include a contractual duty for McNeill to supplement the representations in his application, PHL contracted away its protections under the common law duty of utmost good faith. We acknowledge this duty of utmost good faith may be contracted away by the parties. *Stipcich*, 277 U.S. at 315. This case, however, is factually analogous to the *Stipcich* opinion in that the duty was not included as a contractual term. *See id.* at 318 (stating that "[t]he defendant in insisting that Stipcich was under an obligation to disclose his discovery to it is not attempting to add another term to the contract"). Furthermore, the mere existence of the doctrine presupposes that the parties have not included a contractual duty for the insured to supplement the representations in the policy application. *See id.* ("The obligation was not one stipulated by the parties, but is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract"). "The necessity for complying with [the duty of utmost good faith] is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure." *Id.*

The PHL policy limited the grounds upon which PHL could "contest the validity of this policy" to "any material representation of a fact," as long as it is "contained in the written application" which is "attached to this policy when issued." PHL and McNeill are fully within their rights to contract to limit the scope of misrepresentations which can be relied upon by PHL as grounds upon which to challenge the validity of the policy. See Pittman v. West American Ins. Co., 299 F.2d 405, 411 (8th Cir. 1962) ("[P]arties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material."). It is uncontroverted that McNeill's representations in the policy application, which was attached to the policy when the policy was issued, were true and accurate when made. As such, these representations are not misrepresentations that PHL can use to challenge the policy's validity under the policy's own terms.

The majority suggests we need to go beyond the plain language of the policy by superimposing the "duty of utmost good faith." According to the majority, this duty overrides the specific agreed limitations on PHL's rescission rights so that PHL can rescind this policy based on McNeill's failure to inform PHL of a cardiac test done after McNeill truthfully completed the policy application, and after he was examined by a medical practitioner selected by PHL. I disagree. When a conflict exists between a general common law duty and the explicit language of a contract, the language of the contract should control. This is especially true when the contractual language is language which was unilaterally drafted by PHL, language PHL now wishes to avoid.

The only case in which the Arkansas courts address the issue of a duty of utmost good faith owed by an insured to an insurance company is Dodds v. Hanover Ins. Co., 317 Ark. 563, 880 S.W.2d 311 (1994), the case relied upon by the district court in this case. The Supreme Court of Arkansas in Dodds does not adopt what it refers to as "the generally accepted rule *uberrima fides* which requires an insurance applicant to use due and reasonable diligence to disclose all facts affecting the risk

which arise subsequent to the application and prior to the completion of the contract." Id. at 569, 880 S.W.2d at 314. Instead, the Dodds court only explains that the insurance company "further relie[d]" upon this "generally accepted rule" and that the insureds did not challenge the existence of this "generally accepted rule" because they claimed they met their obligations under the rule. Id. Thus the Dodds decision is grounded in the narrower general rule relating to backdated policies and losses which occur before the issuance of a policy, both of which are not germane to the present case. As such, I do not believe that the Arkansas courts have explicitly stated an insured owes a "duty of utmost good faith" to an insurance company.

The district court also asserted the duty of utmost good faith rule had been adopted by the Eighth Circuit in Springfield Fire & Marine Ins. Co. v. National Fire Ins. Co., 51 F.2d 714 (8th Cir. 1931). Springfield Fire is an Iowa case in which our court declared the "second cardinal rule of insurance contracts" is "[t]hat they are contracts uberrimae fidei" and that this rule has "been adopted as to life insurance contracts." Id. at 719 (citing Stipcich v. Ins. Co., 277 U.S. 311, 316 (1928). In Stipcich, the Supreme Court noted that while "[i]nsurance policies are traditionally contracts *uberrimae fidei* . . . the modern [in 1928] practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial." Stipcich, 277 U.S. at 316. But, the Supreme Court in Stipcich, made clear "[a]n insurer may of course assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy." Id. at 315. Thus, insurance policies in 1928 were traditionally considered to be contracts imposing this duty of utmost good faith, but this duty was being relaxed as insurance companies took greater steps to require applicants to answer questions and this duty did not preclude insurance companies from assuming the risk that changes in the insured's health may occur between the date of application and the date of issuance of a policy. As such, the duty owed by an applicant to the insurance company is a duty which may be modified if the insurance company elects to assume the risk of

changes in the insured's health.  This is what the policy language in PHL does by explicitly limiting when a misrepresentation can be considered material so as to void the policy.

The <u>Stipcich</u> Court also acknowledged that "narrow and unreasonable interpretations of clauses in an insurance policy are not favored" and where "[t]hey are prepared by the insurer" and "open to two constructions, [the construction] most favorable to the insured will be adopted."  <u>Id.</u> at 322 (citations omitted).  Under <u>Stipcich</u>, the policy language which  limits the grounds upon which PHL could "contest the validity of this policy" to "any material representation of a fact" as long as it is "contained in the written application" which is "attached to this policy *when issued*" must be construed in McNeill's favor, limiting the grounds for contesting the policy to material facts contained in the written application and attached to the policy *when issued*.  Where McNeill's alleged misrepresentation is his failure to inform PHL of medical exam results from an exam done weeks after the application was completed, and where this representation is not in the written application attached to the policy when issued, in my view, the alleged failure to disclose is not a valid grounds for contesting the validity of the policy.

PHL could have used language in its application or in its policy establishing a duty upon the applicant to provide PHL with new medical information or any other new information arising before issuance of the policy that would make the application representations false.  PHL chose not to require such a continuing obligation.  Having failed to do so, PHL should not now receive relief from our court by amending the parties' contract with an implied duty of disclosure.

_____

-10-